ROGERS, Justice.
 

 The defendant, W. B.. Pish, was sued for $2,400 as the balance due under a contract of lease, and certain of his movable effects were provisionally seized in the enforcement of the lessor’s privilege. Defendant pleaded prematurity, no cause of action, exemption of the property seized, and that plaintiff violated the lease by taking charge of the leased premises, thereby depriving defendant of the use and occupancy thereof. The court below gave plaintiff judgment for the amount sued for less a credit of $31, and maintained the provisional seizure of all the property seized, except a few articles. Prom this judgment defendant appealed.
 

 Plaintiff and defendant entered into a contract of lease on February 20, 1930, covering certain floor space of a building in the town of Leesville. The lease was to run from March 1, 1930, to March 1, 1935. The consideration of the lease was $3,600, payable in monthly installments of $60 each. The defendant paid the rent up to November 1,1931. On October 27, 1931, defendant, in the nighttime, without notice to plaintiff, removed his effects from the leased premises and secreted them in an obscure place. Two days later, namely, on October 29, 1931, this suit was filed, but the writ of provisional seizure was not executed until December 29, 1931, a short time after defendant had brought back his property to Leesville and placed it in another building.
 

 Defendant’s plea of prematurity is untenable. The basis of the plea is that no rent was due at the time the suit was filed and the writ of provisional seizure issued.
 

 It is indisputable that a lessor can resort to the writ of provisional seizure to secure the payment.of rent not due as well as that which is due. Code Prac. art. 287.
 

 
 *41
 
 The effects which the defendant removed from the leased premises were pledged to secure the rent to become due, and defendant had no right to remove them without plaintiff’s consent. Millot v. Conrad, 112 La. 928, 36 So. 807.
 

 And the abandonment by defendant of the leased premises had the result of maturing the whole amount of the rent under the lease. Hyman v. Hibernia Bank & Trust Co., 144 La. 1074, 81 So. 718.
 

 Defendant’s exception of no cause of ac-tion is leveled at the failure of plaintiff to specifically ask in the prayer of his petition for the maintenance of the writ of provisional seizure.
 

 We do not think the exception is well founded. The lessor’s privilege is created by law and not as a result of the seizure. Plaintiff prayed for a moneyed judgment against defendant on a contract of lease, and he asked that his lessor’s privilege resulting from the lease be recognized on the property sought to be provisionally seized. Plaintiff also prayed for general and equitable relief. There is no doubt as to the character and the extent of the relief sought by plaintiff under his pleadings. Under the prayer for general relief, the recognition of the lessor’s privilege necessarily authorized the maintenance of the writ of provisional seizure.
 

 There is nothing in our view which conflicts with the decision in New Orleans & N. E. R. Co. v. Louisiana Construction & Improvement Co., 49 La. Ann. 49, 21 So. 171. In that ease there was no prayer for a moneyed judgment; no claim for the ownership or the possession of any property; and no demand for any writ to preserve rights or to prevent wrongs. There were serious grievances and complaints set forth, but no redress was asked for. Such a situation is not presented in this case.
 

 Defendant filed a special plea claiming an exemption for the effects provisionally seized, on the ground that they consisted of
 
 tools
 
 and instruments used by him in earning his livelihood.
 

 The court below maintained the exemption as to a few minor tools, such as a hammer, jack, sharpener, awls, and the like, but denied the exemption as to a patching machine, one Champion shoe machine, one Champion finisher, and one electric motor.
 

 Defendant is engaged in the trade or calling of shoemaker and shoe repairer. He testified, without contradiction, that those articles were necessary for the exercise of his trade or calling. Under the circumstances, we think he is entitled to the exemption claimed.
 

 The third paragraph of article 2705 of the Civil Code provides that the lessee shall be entitled to retain, out of the property subjected to the lessor’s privilege, among other things, “the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family.”
 

 In Schwartz v. Dennis, 138 La. 848, 70 So. 857, Ann. Cas. 1917D, 94, a teamster’s wagon was seized and held to be exempt for rent under the foregoing codal article. The same exemption from seizure under execution is embodied in article 644 of the Code of Practice. And the court said that, as the two articles relate to exemptions from seizure, the same
 
 *43
 
 words or phrases used in both should receive the same construction.
 

 In that case it was admitted that the defendant made a livelihood by using his wagon for the purpose of hauling sand, cement, bricks, etc., for hire. And it was held that the wagon as used was “a tool or instrument” exempt from seizure for rent. The court went extensively into the question of what constitutes “tools and instruments” under the codal articles and the decisions in which they were interpreted. The court said that the word “tools” as used in the exemption provisions of our Codes should not be restricted to such as are merely used by mechanics, but snould be extended to include any instrument used in the prosecution of a trade. Among the cases referred to were Farmers & Merchants Bank v. Franklin, 1 La. Ann. 393, where, under article 644 of the Code of Practice, commercial books, counting house furniture and iron safes of a merchant were held to be exempt ; and Prather v. Bobo, 15 La. Ann. 524, where under the same codal article the printing press and material of a printer and editor were held to be exempt.
 

 In the recent case of Wilbert’s Sons Lumber & Shingle Co. v. Ricard, 167 La. 416, 119 So. 411, this court recognized the principal that exemption laws are in derogation of the general rule that all the debtor’s property is the common pledge of his creditors and must be strictly construed, but said that those laws should not. be so rigidly construed as to destroy their purpose and intent; and that, where the claim to exemption can be brought within the spirit and purpose of the statute by a fair and reasonable interpretation, the exemption should be allowed. In that case the court held that a screened motortruck used by a farm lessee to transport his slaughtered beeves to market was an implement necessary to carry on his calling, and, as such, under the provisions of article 2705 of the Civil Code, was exempt from seizure for rent.
 

 In support of his alleged right to provisionally seize defendant’s movable effects, plaintiff relies on the ease of Parker v. Starkweather, 7 Mart. (N. S.) 337, wherein it was expressly held that for the payment of his rent the landlord enjoys a privilege on the tools of the tradesman found on the leased premises.
 

 The case was decided in January, 1829, and was correct under the laws existing at that time. The decision was based on article 2675 of the Civil Code of 1825, reading as follows, viz.: “The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the moveable effects of the lessee, which are found on the property leased.” But in the year 1852 the state Legislature passed an act giving the right to the lessee to retain certain movable effects out of the property subject to the lessor’s privilege. Among the effects enumerated by the statute are “the tools and instruments necessary for the exercise of the trade or profession by which he (the lessee) gains his living, and that of his family.” See Act No. 23 of 1852, p. 13.
 

 When the Civil Code of 1825 was revised in 1870, its article 2675, together with the amendment of 1852 and other amendments, was incorporated into the new Code as article 2705, which is the law controlling this ease.
 

 As hereinabove stated, the movable effects involved herein were provisionally seized on
 
 *45
 
 December 29, 1931. On the following day, December 30,1931, Vida Fish, a son of the defendant, filed an affidavit with the sheriff claiming ownership of the seized property under an alleged bill of sale executed on De*cember 12, 1931. The affiant asked that the property be released to him or that plaintiff be ordered to furnish an indemnity bond under section 3579 of the Revised Statutes. Plaintiff, on the sheriff’s demand, furnished the indemnity bond called for by the affidavit, and the property was not released. Thereafter Vida Fish, the alleged transferee, took no steps to vindicate his alleged ownership of the seized property.
 

 Plaintiff argues that, if the property was originally exempt from seizure, defendant has lost his right to urge the exemption by reason of the purported transfer of the property to his son. The answer to the argument is twofold. In the first place, the plaintiff refused to recognize the validity of the transfer, in which refusal the transferee has apparently acquiesced, and the case has been litigated between the plaintiff lessor and the defendant lessee on the theory that the latter had retained his ownership of the seized property. In the second place, if the transfer to Vida Fish were, in point of fact, a valid transfer, the movable effects transferred are not subject to the lessor’s lien, because they were seized more than fifteen days after their removal from the leased premises and after they had ceased to be the property of the lessee. See article 2709 of the Civil Code.
 

 Defendant contends that plaintiff canceled the lease and lost his recourse against him thereunder by accepting the key of the leased premises and renting them to other tenants.
 

 On this phase of the case, the record -shows that on October 29,1931, the day the suit was filed and the writ issued, the sheriff requested defendant to furnish him with the key of the leased premises, so that the writ could be executed. After some demur, defendant complied with the request. When, however, the sheriff unlocked the door and entered the leased premises, he found only a lot of rubbish, defendant having surreptitiously removed his valuable dffects therefrom on the night of October 27, 1931. The sheriff relocked the door, and offered to return the key to defendant, which, however, defendant refused to accept.
 

 On December 27, 1931, plaintiff asked defendant for the key to the leased premises, when he was informed, for the first time, that the key had been delivered to the sheriff. Plaintiff obtained the key from the sheriff, and temporarily rented the premises to new tenants, receiving from them a total of $31, for which amount credit was given defendant in the judgment rendered against him by the court below.
 

 There is nothing in this to show that plaintiff had released defendant from his obligations under the lease. On the contrary, the evidence discloses that he was not willing to do this. Plaintiff never refused to place the leased premises under defendant’s control on defendant’s complying with his contract obligations. The fact that, on the abandonment by defendant of the leased premises, the plaintiff took charge of them for the purpose of preserving the property and to procure new
 
 *47
 
 tenants for the benefit of the defendant, cannot be considered as amounting to a cancellation of the lease.
 

 Where the lessee abandons the premises, the lessor may rent the property to other tenants, and does not thereby cancel the lease, or impair his recourse upon the lessee. He is, however, equitably bound to credit the lessee for the amount he received from the new tenants. Holden v. Tanner, 6 La. Ann. 74.
 

 Por the reasons assigned, the judgment appealed from is annulled so far as it recognizes plaintiff’s lessor’s lien and privilege upon, and maintains the writ of provisional seizure of, one patching machine, one Champion shoe machine, one Champion finisher and one electric motor; in all other respects the said judgment is affirmed. Costs of appeal to be paid by the plaintiff.